[No. 36261.   Department One.   February 7, 1963.]

PESHASTIN LUMBER & BOX, INC., *Respondent*, v. THE STATE OF WASHINGTON, *Appellant.**

*Reported in 378 P. (2d) 420.

*The Attorney General, Henry W. Wager* and *James A. Furber, Assistants,* for appellant.

*Eisenhower & Carlson, C. John Newlands,* and *Richard K. Quinn,* for respondent.

ROSELLINI, J.—In this action, a taxpayer seeks a refund of certain business and occupation taxes paid under RCW chapter 82.04. The position of the taxpayer, the respondent here, was sustained in the trial court.

The state, appealing, contends that the court was in error in holding that the respondent was not in the business of building public roads and did not receive taxable income from its road-building activities. It is the position of the appellant that the respondent, a lumber manufacturer which purchases and logs timber as an incident to this business, was engaged in the business of building roads when it built its timber-access roads according to government specifications.

As a part of its business activity and during the period in question, July 1, 1954 to December 31, 1957, it was engaged in the performance of 12 contracts for the purchase of timber from the United States Department of Agriculture, Forest Service. These contracts contained many detailed provisions regulating the manner of logging and removing the timber from the tracts involved. Among these provisions were requirements relating to the building of roads for removal of the timber, and these included specifications for the building of roads which were not to be merely temporary, but were to be maintained by the Forest Service after the contracts were completed. There was no provision for payment by the government for these roads. The timber was purchased by the respondent at a bid price which was not below its appraised value.

The appellant urges, however, that the respondent received remuneration in the form of an "allowance" on the purchase price. This "allowance" was the cost of building the necessary roads, which was estimated by the appraiser in arriving at the market value of the timber. The respondent maintains that this was simply a cost of pro-

ducing the finished product and was not remuneration for its services in building the roads.

Under RCW 82.04.280, at the time involved in this controversy, a business and occupation tax was imposed.

"Upon every person engaging within this state in the business of: . . . (2) building, repairing or improving any publicly owned street, place, road, highway, bridge or trestle which is used, or to be used, primarily for foot or vehicular traffic . . . as to such persons, the amount of tax on such business shall be equal to the gross income of the business multiplied by the rate of one-quarter of one percent."

It was measured by the "gross income of the business," defined by RCW 82.04.080:

" 'Gross income of the business' means the value proceeding or accruing by reason of the transaction of the business engaged in and includes gross proceeds of sales, compensation for the rendition of services, gains realized from trading in stocks, bonds, or other evidences of indebtedness, interest, discount, rents, royalties, fees, commissions, dividends, and other emoluments however designated, all without any deduction on account of the cost of tangible property sold, the cost of materials used, labor costs, interest, discount, delivery costs, taxes, or any other expense whatsoever paid or accrued and without any deduction on account of losses."

"Value proceeding or accruing" is defined by RCW 82.04-.090 as follows:

" 'Value proceeding or accruing' means the consideration, whether money, credits, rights, or other property expressed in terms of money, actually received or accrued. . . ."

█ It is manifest, from these provisions, that the remuneration taxable must be expressed in terms of money. The appellant concedes that no money was received by the respondent, and also concedes that loggers must build roads if they are to remove timber which they purchase, and that such roads are a necessary cost of doing business. It admits that it does not consider this a taxable activity in the ordinary case, but contends that it was changed from a cost of doing business to a sale of services by the fact that the government imposed specifications in this instance

and was to retain the roads for use by the Forest Service and the public after the timber was removed.

In order to find a remuneration for this activity, the appellant was compelled to go to the appraisal prepared by the Forest Service's appraiser prior to the time the contracts were executed.

The record discloses that the Forest Service is required by law to sell its timber at not less than the appraised value. To ascertain the appraised value, the appraiser, in each instance, estimated the cost of building the roads which would be necessary for the removal of the timber. He also estimated the other logging and manufacturing costs. All of these costs were then deducted from the going market price of the manufactured product which the purchaser would sell, a reasonable allowance was made for profit, and the difference was determined to be the value of the stumpage. All timber valued above $2,000 must be advertised for bids, and sold competitively.

There was no showing that the actual cost of road construction was equal to or less than the appraiser's estimate; nor was there any showing that the cost of road construction was greater because of the specifications imposed, than it would have been had there been no specifications. To the contrary, a member of the Forest Service who was an expert witness testified that it is the policy of the service, in drawing specifications, to apply what is called the "Prudent Operator Principle." This principle he said

". . . simply is that we have no authority to require a purchaser of our timber to build any more road or any higher standard road than is necessary to remove the timber."

In further explanation, he said that the operator, as well as the Forest Service, benefited when good roads were built, because they reduced the cost of trucking the lumber out and the cost of maintenance. The main purpose in imposing the specifications, he said, was to protect the property of the United States from erosion and other bad effects of careless location and construction of roads. He

also said that, in cases where the Forest Service desired to have roads that were longer or wider, or of better quality than was necessary to remove the timber, it sometimes contracted with purchasers to build these roads according to the government's need and paid them in cash for the extra cost involved. No such contracts were involved in this case.

The testimony of this witness was not contradicted.

There was no showing by the appellant, in other words, that the respondent was required to do any more under these contracts than it would do, as a prudent operator, if there were no specifications. And there is no showing that the activity was paid for by the government, any more than it paid for any other of the respondent's costs of doing business. It merely sold timber and received its market value. There was, in short, no showing that the respondent received any remuneration, expressible in terms of money, and consequently this was not a taxable activity.

Having determined that the trial court was correct on this ground, we need not consider the other grounds put forward by the respondent in support of the judgment.

The judgment is affirmed.

HILL, WEAVER, and HUNTER, JJ., concur.